UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES, | ) | CR 06-656(A) SVW |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANTS' |
| | ) | MOTIONS TO DISMISS [204, 210, |
| v. | ) | 213, 221, 222, 223, 224] |
| | ) | |
| GEORGE TORRES-RAMOS, | ) | |
| aka Jorge Torres, | ) | |
| aka G, | ) | |
| MANUEL TORRES-RAMOS, | ) | |
| aka Manny Torres, | | |
| aka Meno | | |
| STEVEN TORRES, | | |
| aka Stevie, | | |
| MARIO SOLANO, | | |
| CARLOS MONTERROSO, | | |
| GLORIA MEJIA, | | |
| STEVE CARMONA, and, | | |
| GEORGE LUK. | | |
| Defendants. | | |

///

///

## I.   INTRODUCTION

Defendant George Torres-Ramos ("George Torres") filed this Motion to Dismiss Counts One, Two, and Three of the Government's First Superseding Indictment ("Indictment") on September 24, 2007. George Torres, along with Defendant Manuel Torres-Ramos ("Manuel Torres"), was charged with an array of criminal activity, including violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Violent Crimes in Aid of Racketeering Act ("VICAR"). George Torres asserts that the Indictment's substantive RICO allegations under Count One for violation of 18 U.S.C. § 1962(c) fail to state facts sufficiently demonstrating the "enterprise" and "pattern" elements of that offense. (Mot. to Dismiss, at 1.) Count Two, Defendant maintains, must fail because it charges a RICO conspiracy violation under 18 U.S.C. § 1962(d), which is predicated on the allegedly defective enterprise allegations. (Id.) Defendant contends that Count Three must also fail because it charges a violent crime in aid of racketeering activity and so is similarly dependent on the allegedly defective enterprise allegations. 18 U.S.C. § 1959(a)(6). Defendants Manuel Torres, Steve Carmona, George Luk, Carlos Monterroso, Mario Solano, and Steven Torres have also filed motions to join George Torres's Motion, some of which raise new arguments discussed below seeking dismissal of Counts One and Two of the Indictment as to them.[1] The Court heard oral arguments concerning

---

[1] In addition to joining George Torres's Motion, Manuel Torres also filed a separate Motion to Dismiss Count One of the Indictment on September 28, 2007 that raises related legal issues and is therefore discussed in this Order, as well. See infra Section III.D.

2

the present Motion on November 5, 2007. On January 2, 2008, the Court ordered supplemental briefing on a number of additional issues raised, but not fully addressed, by the parties. After considering the additional briefing submitted by the parties, the Court DENIES Defendant's Motion to Dismiss and all arguments joined to it by other defendants.

## II. FACTUAL BACKGROUND

The Indictment generally alleges that George Torres owned, operated, and was an employee of six corporations referred to collectively as the Numero Uno supermarket corporations ("Numero Uno Franchises"). (Indictment, at 2.) Defendants Manuel Torres-Ramos, Mario Solano, Carlos Monterosso, Gloria Mejia, Ned Tsunekawa, and Ignacio Meza are also alleged to be employees of the Numero Uno Franchises. (Indictment, at 2.) The Indictment further alleges that George Torres, along with the Numero Uno Franchises, Manuel Torres-Ramos ("Manuel Torres"), Mario Solano, Carlos Monterosso, Gloria Mejia, Ned Tsunekawa, Ignacio Meza, Steve Carmona, George Luk, Raul Del Real, Derrick Smith, Juan Mendoza, and Fernando Villapondo formed the Torres Enterprise, "a criminal organization which operated principally in the City of Los Angeles, California." (Indictment, at 3.) The Indictment alleges that "[t]he Torres Enterprise constituted an 'enterprise' as defined by "18 U.S.C. Section 1961(4)." In support of this assertion, the Indictment further alleges that "[t]he Torres Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the

objectives of the enterprise." (Indictment, at 3.) The Indictment identifies the common purposes for the alleged RICO enterprise as follows: "(a) Preserving, protecting, and expanding the operations, profits, market share, and the power of the Torres Enterprise; (b) Enriching the members and associates of the Torres Enterprise; and, (c) Keeping victims in fear of the Torres Enterprise and its members and associates." (Indictment, at 3.)

The Indictment alleges that the Torres Enterprise engaged in nine separate predicate acts between January 1, 1985 and June 2, 2006. In the order in which they occurred, these acts are: (1) buying and receiving stolen goods; (2) soliciting and conspiring to commit the murders of the Primer Flats street gang which resulted in the murder of E.C.; (3) soliciting and conspiring to commit the murder of J.M.; (4) soliciting and conspiring to commit the murder of Ignacio Meza; (5) using a communication facility to facilitate narcotics distribution; (6) harboring undocumented aliens; (7) conspiring to engage in extortion of persons suspected of shoplifting the Numero Uno Franchises; (8) bribing city commissioner Steve Carmona; and, (9) intimidating witness L.G. (Indictment, at 5-11.)

The present motions pertain to Counts One, Two, and Three of the Indictment. Count One of the Indictment alleges George Torres and Manuel Torres conducted or participated in the affairs of the Torres Enterprise under Section 1962(c) of RICO. 18 U.S.C. § 1962(c). Count Two of the Indictment alleges that George Torres, Manuel Torres, Steve Carmona, George Luk, Mario Solano, and Carlos Monterosso conspired to conduct or participate in the affairs of the Torres Enterprise in violation Section 1962(d) of RICO. 18 U.S.C. § 1962(d).

Count Three alleges George Torres and Steven Torres conspired to commit a violent crime in aid of racketeering activity in violation of Section 1959 of VICAR. 18 U.S.C. § 1959(a)(6).

## III.  ANALYSIS

### A.  Pre-Trial Motion to Dismiss Indictment

The federal courts possess the power to review a pre-trial motion to dismiss an indictment for failure to state an offense.   In such a review, however, the Court must accept the truth of the allegations presented in the indictment.   See United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996).   The Ninth Circuit has found that in reviewing whether an offense is properly charged in an indictment, the Court must examine only the four corners of the indictment.   U.S. v. Boren, 278 F.3d 911, 914 (9th Cir. 2002); United States v. Schaefer, 2006 WL 276941, at *1 (D. Ariz Feb. 2, 2006). See also United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993) (stating, "[g]enerally, Rule 12(b) motions are appropriate to consider 'such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction.'") (quoting United States v. Smith, 866 F.2d 1092, 1096 n.3 (9th Cir. 1989)).   When a defendant challenges the sufficiency of an indictment, the review is distinct from that of a motion to dismiss a civil claim.   "Generally, an indictment is sufficient if it sets forth the elements of the charged offense so as to ensure the right of the defendant not to be placed in double jeopardy and to be

informed of the offense charged." United States v. Rodriquez, 360 F.3d 949, 958 (9th Cir. 2004) (quoting United States v. Woodruff, 50 F.3d 673, 676 (9th Cir. 1995) (internal citations omitted)). See also U.S. v. Fernandez, 388 F.3d 1199, 1220 (9th Cir. 2004) ("We have held that an indictment setting forth the elements of the offense is generally sufficient."); Woodruff, 50 F.3d at 676 ("In the Ninth Circuit, '[t]he use of a 'bare bones' information-that is one employing the statutory language alone-is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished.'" (quoting United States v. Crow, 824 F.2d 761, 762 (9th Cir.1987)).

Defendants seek dismissal of several counts of the Indictment on the basis of the Government's proffered Statement of Facts. (Def. Supp., at 7.) Defendants cite cases in which federal courts have resolved certain issues pre-trial where all relevant facts were available and undisputed. See, e.g., United States v. Phillips, 367 F.2d 846, 855 (9th Cir. 2004). Whatever the applicability of this precedent to the issues raised in Defendants' Motion, for two reasons it is not the case that all available facts have been presented to the Court in the instant action as the Defendant asserts. First, the Statement of Facts is only directed to explicating the substantive RICO count of the Indictment and not the remaining counts. Second, the Government has maintained, at both hearing and in its original moving papers, that its Statement of Facts is not a full factual proffer as to even the substantive RICO count because it asserts more facts will be discovered as a result of its continued investigation and review of documents prior to trial. While the Court is skeptical

of this assertion in light of the length of the Government's investigation, it nonetheless precludes the Court from concluding that all facts relevant to each count of the Indictment are before it and undisputed.  As such, the Court is in no position to dismiss any part of the Indictment on the basis of the Statement of Facts, regardless of the import of the cases cited by Defendants.

**B.   Enterprise Requirement**

Count One alleges a substantive RICO violation.   18 U.S.C. § 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  Accordingly, demonstrating an enterprise is the first element the Government must prove in bringing a RICO action. Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007).  The Supreme Court has defined an enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct." U.S. v. Turkette, 452 U.S. 576, 583 (1981). An enterprise "is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." Odom, 486 F.3d at 549. In order to establish the existence of such an enterprise, the Government must allege that the associates of the alleged enterprise: 1) "associated for 'a common purpose of engaging in a course of conduct,'" 2) operated as part of "an ongoing

organization, formal or informal," and 3) "function[ed] as a
continuing unit." Id. (quoting Turkette, 452 U.S. at 583).
Defendants argue that the Indictment fails to sufficiently allege
facts supporting any of these three elements in alleging the
existence of the Torres Enterprise.

### 1.   Common Purpose

Defendants assert that the purposes of the alleged RICO
enterprise in the Indictment are insufficient.  In their initial
briefing, Defendants maintain that the common purposes alleged in the
Indictment "are so broad as to be meaningless." (Def. Rep., at 8.)
Defendants essentially argue that if the Government's allegations of
common purpose were to be accepted, this factor would serve no
limiting function. (Def. Rep., at 9.)  The Government responds that
broad purposes such as those it alleges have been accepted in the
past. (Gov. Opp., at 10 fn 6.)  In particular, it notes that in
United States v. Eppolito, a Court accepted an enterprise whose
alleged purpose "was to generate money for its members and associates
. . . through various legal and illegal activities."  436 F. Supp. 2d
532, 539 (E.D.N.Y. 2006).  Defendants in turn note that even in
Eppolito, the Government further alleged in its indictment more
specific means by which the alleged enterprise achieved its broad
purposes. Id.

In effect, the parties are disputing whether it is sufficient
for the Government to allege the broad objectives of the enterprise,
or whether it must allege to some degree the specific course of

8

conduct by which the enterprise sought to achieve those general objectives as part of its common purpose allegations. The clear language of the Supreme Court arguably supports the Defendants' interpretation, as it calls for an allegation of a "common purpose of engaging in a course of conduct." Turkette, 452 U.S. at 576. Furthermore, allegations of common purpose in indictments recently analyzed by the Ninth Circuit under RICO have involved more specific allegations of the enterprise's objectives and courses of conduct than offered by the Government. See, e.g., Odom 486 F.3d at 552 (finding "that defendants had the common purpose of increasing the number of people using Microsoft's Internet Service, and doing so by fraudulent means"); U.S. v. Feldman, 853 F.2d 648, 657 (9th Cir. 1988) ("The indictment alleges that the enterprise 'associated . . . for the purpose of defrauding insurance companies and others through repeated acts of arson.'").

However, Defendants can point to no case in which an allegation of enterprise was rejected solely for having broadly defined common purposes. In addition, Defendants' assertion that a broadly defined common purpose serves no limiting purpose is unfounded. The Government's allegation of a broad common purpose does limit Defendants' RICO liability to acts committed for the purpose of benefitting the enterprise as a whole and not for the perpetrators' individual gain.  Given that the prototypical RICO enterprise of a mafia-style organization likely engages in a variety of illegal and legal courses of conduct in pursuit of its general objective of enriching itself, it seems inappropriate to require the Government to state as part of the alleged enterprise's common purposes the

specific means by which the alleged enterprise intended to achieve its broad purposes. The Eleventh Circuit has recognized as much in holding "that proof of an association's devotion to 'making money from repeated criminal activity . . . demonstrates an enterprise's common purpose of engaging in a course of conduct, regardless of whether the criminal activity is diverse.'" U.S. v. Battle, 473 F. Supp. 2d 1185, 1191 (S.D. Fla. 2006) (quoting United States v. Church, 955 F.2d 688, 698 (11th Cir. 1992)); see also U.S. v. Cagnina, 697 F.2d 915, 920-21 (11th Cir. 1983) ("[P]ersons who had committed a variety of unrelated offenses with no agreement as to any particular crime could be convicted of a RICO offense, because they were associated for the purpose of making money from repeated criminal activity.")  Other courts have followed suit in recognizing that collective enrichment through a variety of activities is sufficient to qualify as a common purpose for an enterprise.  See, e.g., U.S. v. Johnson, 440 F.3d 832, 840 (6th Cir. 2006) ("The common purpose of making money can support the enterprise element of a RICO conviction."); Ryan v. Clemente, 901 F.2d 177, 181 (1st Cir. 1990) ("Of course, insofar as the complaint accuses the state defendants of sharing the enterprise's improper objective-making money-and of having furthered that objective, it sets forth a proper legal theory."); United States v. Elliott, 571 F.2d 880, 922 (5th Cir. 1978) ("[A] single enterprise engaged in diversified activities fits comfortably within the proscriptions of the [RICO] statute and the dictates of common sense."); Gonzales v. Lloyds TSB Bank, plc, 2006 WL 4756390, at *7 fn. 4 (C.D. Cal. June 7, 2006) ("Here, Plaintiffs satisfy the requirements of pleading a common purpose because they

sufficiently allege a common goal of financial profit, and they allege that this goal was achieved through related offenses."); U.S. v. Cooper, 91 F. Supp. 2d 60, 68 (D.D.C. 2000) ("It is clear an enterprise can be established through an informal group of people who come together for the common purpose of obtaining financial gain through criminal activity.")  Hence, it does not appear that the common purposes alleged in the Indictment of profiting the enterprise and keeping others in fear of its members through unspecified legal and illegal activity are insufficient to support conviction.

Following the Court's request for supplemental briefing, Defendants attempted to more exactly pinpoint a deficiency in the Government's allegations of common purpose.  Defendants assert that what is lacking from the common purposes alleged in the Indictment is not so much an allegation that the Torres Enterprise sought to profit the enterprise and keep others in fear of its members through specific courses of conduct, but rather an allegation that the members of the Torres Enterprise sought to profit and protect the enterprise, at least in part, *through an illegal course of conduct*, even if otherwise unspecified.  It is true that in each of the cases previously mentioned, the common purposes alleged for the enterprises at issue were very broad, but nonetheless included a purpose of engaging in at least generalized illegal conduct. The Indictment by contrast makes no allegation that the enterprise as a whole had as a specific purpose engaging in illegal conduct. However, there is no requirement in the statute or in the Supreme Court's holding in Turkette that an Indictment allege as part of an enterprise's common purpose the alleged illegal activity at issue if it is otherwise

clear as here that such activity was pursued in furtherance of the alleged common purposes of the enterprise. The relevant language of the statute states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). The statute requires that the defendant conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. It does not appear to require that the enterprise itself have as an end purpose the pattern of racketeering activity. Nor does the statute define an enterprise as one with a specifically illegal purpose. An enterprise is defined merely as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Id. This broad definition is only logical, as the statute does not seek to make membership in an enterprise a crime, but rather the carrying out of the enterprise's affairs through a pattern of racketeering activity. At the same time, the Supreme Court in Turkette merely requires allegation of a "common purpose of engaging in a course of conduct," not of engaging in the pattern of racketeering activity specifically or of an illegal course of conduct generally. Turkette, 452 U.S. at 576. Again, this is only sensible as the Supreme Court has made clear that an enterprise may be both legitimate and illegitimate and "is an entity

separate and apart from the pattern of activity in which it engages."
Id. at 583.  It necessarily follows from this conclusion that an
enterprise can and often will have purposes broader or more
multifarious than merely committing the pattern of racketeering
activity at issue or illegal activity generally.  Therefore, the
Indictment's failure to allege that the Torres Enterprise has as a
specific objective the accomplishing of its broad purposes through,
in part, illegal activity is not problematic.  The Indictment alleges
as required that the Torres Enterprise had as a common goal profiting
its members and keeping others in fear of them and that those goals
were pursued in part by Defendants through the alleged pattern of
racketeering activity.  (Indictment, at 3-4.)  This is sufficient to
meet the common purpose requirement.  See Cagina, 607 F.2d at 922
("Although the evidence did not show that every member of the
enterprise participated in or knew about all its activities, such
evidence was not necessary to prove the existence of the
enterprise.").

The authority cited by Defendants purportedly stating otherwise
are each inapplicable.  United States v. Fernandez, 892 F.2d 976 (11th
Cir. 1989) and In Re Managed Care Litig., 430 F. Supp. 2d 1336 (S.D.
Fla. 2006) discuss only the requirements for alleging conspiracy,
which, unlike a RICO enterprise, is necessarily defined as possessing
a specific illegal objective.  See Fernandez, 892 F.2d at 987 ("[I]t
is fundamental to the law of conspiracy that the government show an
agreement between two or more persons to commit a *crime*.") (emphasis
in original); see also U.S. v. Griffin, 660 F.2d 996 (4th Cir. 1981)
("[O]ne of the avowed purposes of RICO was to relieve some of the

deficiencies of the traditional conspiracy prosecution as a means for coping with contemporary organized crime. The increasing complexity of 'organized' criminal activity had made it difficult to show the single agreement or common objective essential to proof of conspiracy . . . ."). Defendants' reliance on various opinions dismissing civil RICO complaints is also misplaced as each of the alleged enterprises in those cases possessed wider deficiencies than a broad allegation of common purpose. In each, the court found not only the claimed purposes of the alleged enterprises overly innocent and broad, but also found insufficient allegation that all the members of the alleged enterprise possessed any ongoing organization or in most cases even possessed awareness of the alleged fraudulent activity they were charged with carrying out in concert. See In re Pharmaceutical Industry, 307 F. Supp. 2d 196, 204 (D. Conn. 1998); Blue Cross of California v. Smithkline Beecham Clinical Lab., Inc., 62 F. Supp. 2d 544, 552-53 (D. Conn. 1998); In re Lupron Marketing & Sales Practices Litig., 295 F. Supp. 2d 148, 174 (D. Mass. 2003); 800537 Ontario Inc. v. Auto Enterprises, Inc., 113 F. Supp. 2d 1116, 1123 (E.D. Mich. 2000); Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc., 2005 WL 1279046, at *2 (W.D. Mo. 2005) (unpublished decision). As such, in each case the alleged enterprise was found to be wholly amorphous and, in most of the cases, the alleged individual defendants were found be lacking in culpability for the fraudulent conduct. In this case, by contrast, though the common purposes alleged for the enterprise are extremely broad, there are sufficient allegations in the Indictment with regard to the ongoing organization and continuity of the enterprise as an overlay on the Numero Uno

Franchises, as discussed below, and potential to find that its members were aware of its existence and illegal activities to render it nonetheless concrete and its members potentially culpable.

Of course, if at trial the Government is unable to prove that the alleged members of the enterprise were each aware that they were associated with the Torres Enterprise and not merely the Numero Uno Franchises, then the Government will have failed to meet its burden for showing an enterprise. To prove such awareness the Government will necessarily need to show that all members of the enterprise were aware that there was an organization over-laid on the Numero Uno Franchises engaged in illegal activity supporting the legitimate profit-making activities of the Numero Uno Franchises, as discussed below. If this proof is not made then the Government will have only shown that its alleged members were aware they were employees of the Numero Uno Franchises, rather than members of the alleged over-laid enterprise. <u>Cf.</u> <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 185 (1993) ("§ 1962(c) cannot be interpreted to reach complete 'outsiders' because liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs.").

### 2. Ongoing Organization

"An ongoing organization is 'a vehicle for the commission of two or more predicate crimes.'" <u>Odom</u>, 486 F.3d at 552 (quoting <u>Cagnina</u>, 697 F.2d at 921-22 (internal quotation marks omitted)). The Government alleges in the Indictment that the Torres Enterprise is an

"ongoing organization." (Indictment, at 3.) However, Defendants argue that the Torres Enterprise, as alleged in the Indictment, lacks a unitary organizational structure. Defendants assert that the Government has offered "a string of individuals and entities allegedly involved in criminal activity and a string of crimes that individuals allegedly committed" or, at best, a "hub and spokes" structure for the enterprise with George Torres engaging in numerous separate, unrelated conspiracies with the various alleged members of the enterprise. (Def. Mot., at 18.) The Government asserts in reply that it can be discerned from the Indictment that the organizational structure of the enterprise exists as an "overlay" to the legitimate Numero Uno Franchises themselves, with George Torres at the top, acting as "central decision maker in nearly all of the illegal activity." (Gov. Opp., at 12-13.) The Court agrees that such a structure can be discerned from the allegations of the Indictment. George Torres is alleged to be the owner and operator of the Numero Uno Franchises and to have directed employees of the Numero Uno Franchises to commit or assist him in committing nearly all the predicate acts alleged (See, e.g., Indictment, at 1, 14, 17-18, 29, 41-41.) However, Defendants argue this proposed organizational structure is insufficient to constitute an enterprise.

As an initial matter, the Ninth Circuit has clearly held, as both parties acknowledge, that the Government need not demonstrate "an ascertainable organization structure beyond whatever structure is required to engage in the pattern of illegal racketeering activity." Odom, 486 F.3d at 551. This holding reflects the fact that "criminal enterprises 'may not observe the niceties of legitimate

organizational structures.'" Id. at 551 (quoting United States v. Patrick, 248 F.3d 11, 19 (1st Cir. 2001). Defendants attempt to partially resuscitate this requirement by pointing to a Second Circuit opinion allegedly requiring the Government to present evidence of the "hierarchy, organization, and activities" of the alleged enterprise. First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 174-75 (2d Cir. 2004). A close reading of this case, however, reveals that the court only regarded such evidence of ascertainable structure as probative of the enterprise functioning as a continuing unit, not as independently necessary. Nothing in the opinion indicates that providing the details of organizational structure is necessary to a showing of a RICO enterprise. Id. See also, U.S. v. Dixon, 167 Fed. Appx. 841, 843 (2d Cir. 2006) (unpublished decision) ("Although we have considered the existence of a hierarchy as evidence of a racketeering enterprise, it is not the only piece of evidence from which a jury may infer the existence of RICO enterprise").

Defendants are correct in citing authority for the proposition that an enterprise cannot be established merely through a "conclusory naming of a string of entities." See, e.g., Moy v. Terranova, 1999 WL 118773, at *5 (E.D.N.Y. 1999); First Nationwide Bank v. Gelt Funding, Corp., 820 F. Supp. 89 (S.D.N.Y. 1993). Clearly, to meet the ongoing organization requirement an enterprise must have "some structure, to distinguish an enterprise from a mere conspiracy." U.S. v. Richardson, 167 F.3d 621, 625 (D.C. Cir. 1999) (quoting United States v. Korando, 29 F.3d 1114, 1117 (7th Cir. 1994) (internal quotation omitted)). The Defendants are incorrect, however, in asserting that

the Government fails to allege facts sufficient for a finding of some structure.  The Government does not allege a mere string of entities, but rather, as discussed above makes factual allegations from which it can be discerned that the enterprise consists of an overlay on the Numero Uno Franchises organization under the direction of George Torres.  Ninth Circuit courts have held that a legitimate business "provides a separate, ascertainable structure to [a] RICO enterprise."  In re National Western Life Ins. Deferred Annuities Litigation, 467 F.Supp.2d 1071, 1081 (S.D. Cal. 2006) (citing Chang v. Chen, 80 F.3d 1293, 1299 (9th Cir. 1996)).  Indeed, combating the infiltration of legitimate businesses by organized crime is the recognized primary purpose of RICO. Turkette, 452 U.S. at 591.[2]

The structure for the enterprise that the Government alleges is discernable from the Indictment is also not a mere "hub-and-spokes structure" as it has been described in Cedar Swamps Holdings, Inc. v. Zaman. 487 F. Supp. 2d 444, 450 (S.D.N.Y. 2007). A hub-and-spokes structure, according to Cedar Swamps, is one in which a series of independent crimes are committed by one person with a series of different independent accomplices.  Id. What is discernable from the Indictment, however, is that a series of crimes were committed by George Torres relying on different people associated with the Torres Enterprise through the Numero Uno Franchises.  The structure of the Numero Uno Franchises also functions as the connective tissue of the

[2]   The Ninth Circuit has clearly held that a corporation can be part of a RICO enterprise. See, e.g., United States v. Blinder, 10 F.3d 1468, 1473 (9th Cir. 1993). Though Defendants argue that the rationale for this holding has been undermined by Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, (2001), it was reaffirmed by the Ninth Circuit as recently as 2007 in Odom, 486 F.3d at 548 (finding both a software manufacturer and retailer to be individuals for purposes of RICO liability).

enterprise, rather than merely George Torres as in a true hub-and-spokes conspiracy. As such, it appears the Indictment does allege an enterprise that could be found to be an ongoing organization, depending of course on the facts presented at trial.

In its prior supplemental order the Court expressed concern as to how non-employees of the Numero Uno Franchises could be alleged to be members or associates of the Torres Enterprise given the Government's reliance on the Numero Uno Franchises in alleging an ongoing organization for the enterprise. Certainly, a non-employee could be associated with the Torres Enterprise in some other manner than employment by the Numero Uno Franchises, but the basis for that connection should be discernable from the Indictment. As Steve Carmona and George Luk are the only alleged non-employee associates of the enterprise charged with a violation of RICO in the Indictment, the Court is only truly concerned with their connection to the Torres Enterprise. Whether the other alleged non-employee members and associates of the enterprise are sufficiently connected to the enterprise is irrelevant.

The Court finds that the Indictment does sufficiently allege that Mr. Luk and Mr. Carmona were associates of the Torres Enterprise. Under Ninth Circuit law, "[a]ssociated outsiders who participate in a racketeering enterprise's affairs fall within RICO's strictures." United States v. Tille, 729 F.2d 615, 620 (9th Cir. 1984). All that is necessary to prove a defendant's association with an enterprise is "[p]roof of defendant's association with the illegal activities of the enterprise." Id. Apart from the Indictment's general allegation of Mr. Carmona and Mr. Luk's association with the

Torres Enterprise, the Indictment makes a number of specific allegations essentially asserting that Mr. Carmona and Mr. Luk worked together to secure a liquor license from the Los Angeles Central Area Planning Commission ("CAPC"), of which Mr. Carmona was a member, for one of the Numero Uno supermarkets in exchange for various bribes from George Torres. (Indictment, at 2-3, 32-37.) This activity is alleged to have begun in mid-2002 and continued into 2006. (Id., at 32-37.)  This activity is alleged to form the basis of a predicate act of the enterprise. (Id., at 9-10.)  Mr. Carmona and Mr. Luk are therefore clearly alleged to have been associated with an aspect of the illegal activities of the Torres Enterprise. Whether or not the Government can prove this association is obviously another matter, but the Indictment does adequately allege the association under the low bar for criminal indictments discussed above. The overall sufficiency of the Indictment's allegations as to Mr. Carmona and Mr. Luk's culpability under Section 18 U.S.C. § 1962(d) is discussed below. See infra, at 48-52.

### 3.   Continuing Unit

Defendants also challenge whether the Government has sufficiently alleged that the enterprise is a continuing unit.  The Indictment does allege generally that the Torres Enterprise's "members functioned as a continuing unit."  (Indictment, at 3.) Defendants argue, however, that the Torres Enterprise as alleged is not a "single, durable criminal organization."  (Def. Rep. at 11.) Defendants contend that the Government fails to allege a "'core of

constant personnel'" for the enterprise that they argue is necessary
for a finding that the enterprise operated as a continuing unit.
(Def. Rep., at 11 (quoting <u>United States v. Hoyle</u>, 122 F.3d 48, 51
(D.C. Cir. 1997).) Defendants note that different groups of
individuals are alleged to have perpetrated each of the alleged
predicate acts with only three of the thirteen alleged to have
engaged in more than one of the alleged predicate acts. (<u>Id.</u>)

Though the Ninth Circuit's explication of the continuing unit
element is far from clear, it rejects the notion that "[t]he
continuity requirement . . . requires that every member 'be involved
in each of the underlying acts of racketeering, or that the predicate
acts be interrelated in any way.'" <u>Odom</u>, 486 F.3d at 552 (quoting
<u>U.S. v. Qaoud</u>, 777 F.2d 1105, 1116 (6th Cir. 1985)). The Ninth
Circuit instead views the requirement as "focus[ing] on whether the
associates' behavior was 'ongoing' rather than isolated activity."
<u>Id.</u> (quoting <u>U.S. v. Patrick</u>, 248 F.3d 11, 19 (1st Cir. 2001)).
Analysis of whether the alleged enterprise can justify a finding of
this element, therefore, arguably conflates to a degree with the
"pattern" requirement discussed below. <u>C.f.</u>, <u>Turkette</u>, 452 U.S. at
583 (finding that evidence establishing an enterprise may "coalesce"
with the evidence to establish a pattern of racketeering activity);
<u>Best Deals on TV, Inc. v. Naveed</u>, 2007 WL 2825652, at *4 (N.D. Cal.
Sept. 6, 2007) (analyzing the "continuing unit" requirement in
conjunction with the "pattern" requirement). To the extent the
continuing unit element can be regarded as separate, it appears that
it could be found from the allegations of the Indictment. The
predicate acts cover a span of approximately nine years. Though many

of the predicate acts of the enterprise are alleged to be widely spaced in time, George Torres is alleged to have directed acts of extortion throughout the entire period discussed in the Indictment and to have concealed undocumented workers in conjunction with other members of the enterprise from 1989 to 2005. (Indictment, at 14, 41-44.) Hence, it appears that at least some aspect of the activities of the racketeering enterprise are alleged to have been ongoing to a degree, though it is unclear from the Indictment how frequent such acts were. Though the Torres Enterprise is not alleged to be engaged in criminal acts of an identical nature performed by the same persons, these do not appear to be requirements under the continuing unit standard. See Odom, 486 F.3d at 551 (citing U.S. v. Cagnina, 697 F.2d 915, 921 (11th Cir. 1983)). Therefore, the allegations of the Indictment do appear to at least create the possibility that the Torres Enterprise could be found to be a continuing unit, though ultimate determination of this issue will obviously turn on the facts presented at trial.

Furthermore, to the extent this element does require a certain amount of continuous personnel, it does appear the Government has alleged certain core persons within the enterprise. In particular, George Torres is alleged to be involved in nearly every predicate act and other members of the enterprise are alleged be involved in multiple predicate acts and, more importantly, to have been associated with the enterprise for many years in between predicate acts. (Indictment, at 5-9, 14-18.) Other courts have held that an enterprise could generally be found on the basis of the continuous leadership of a few individuals. See, e.g., U.S. v. Feldman, 853

F.2d 648, 659 (9th Cir. 1988) ("[I]t is not necessary that all the members of an enterprise have participated throughout its life. Instead, the government must show that the participants overlap to a significant degree.") (citing U.S. v. Hewes, 729 F.2d 1302, 1311 (11th Cir. 1984)); U.S. v. Smith, 413 F.3d 1253, 1267 (10th Cir. 2005) ("Thus, the central feature of [the continuing unit"] element is simply that each KMD member played a role in the gang that is both consistent with KMD's organizational structure and furthered the gang's activities."); United States v. Tillett, 763 F.2d 628, 631 (4th Cir. 1985) ("Although the faces in the group may have changed, there was substantial evidence of a structure within the group within which the various associates operated according to their specific function with regard to the smuggling venture."); United States v. Lemm, 680 F.2d 1193, 1199-200 (8th Cir. 1982) (finding that the "open, continuous leadership" of one person established sufficient continuity for an enterprise because "the associational ties of those charged with a RICO violation amount to an organization pattern or system of authority."); U.S. v. Battle, 473 F. Supp. 2d 1185, 1191 (S.D. Fla. 2006) (holding that "an enterprise may consist of a core leader and a changing roster of associates that were engaged, at various times, in obtaining income from illegal acts."). Whether the Government at trial can in fact prove that a core of individuals was associated with the enterprise throughout its life is of course open to question, but such has been adequately alleged.

Defendants seek to distinguish the Torres Enterprise from other alleged enterprises lacking consistent personal upheld by courts by pointing out that the alleged Torres Enterprise not only lacks

consistent personnel around George Torres committing the predicate acts, but also lacks consistent roles and functions for its personnel. See U.S. v. Bledsoe, 674 F.2d 647 (8th Cir. 1982) ("For example, the operatives in a prostitution ring may change through time, but the various roles which the old and new individuals perform remain the same.") (Def. Supp., at 10.)   This seems in effect a re-phrasing of the Defendants' arguments concerning structure. To assert that an enterprise requires ascertainable and consistent roles and functions that can be filled by rotating personnel is to assert that an enterprise requires an ascertainable structure. As noted above, the ongoing structure discernable from the Indictment is an overlay on the Numero Uno Franchises. The roles filled by the shifting enterprise members are that of supermarket employees.   By contrast, in each of the cases cited by Defendants where a court did not find an enterprise based on a failure to demonstrate continuous roles and functions for its members, the court determined there was no allegation or evidence of any ongoing hierarchy or structure filled by shifting personnel.   See Warden v. Cross, 94 Fed. Appx. 474, 476 (9th Cir. 2004) (unpublished opinion) ("Nor do Warden's allegations satisfy the continuity requirement, because she did not plead that, these entities continue to function as one unit following the conclusion of the underlying state action."); VanDenBroeck v. CommonPoint Mortg. Co., 210 F.3d 696 (6th Cir. 2000) ("Most cases interpreting the elements applicable to this statute require evidence of some sort of 'chain of command' or other evidence of a hierarchy, even a highly limited one. Evidence of any such hierarchical structure is absent from this appeal."); Bachman v. Bear, Stearns &

<u>Co., Inc.</u>, 178 F.3d 930, 932 (7th Cir. 1999) ("[T]he duration here was a function not of there being an organization able to hold itself together through time, but merely of the nature of the fraud, which involved the manipulation of contractual rights, and of the fact that the victim brought a lawsuit."); <u>Gentle Wind Project v. Garvey</u>, 407 F .Supp. 2d 282, 288(D. Me. 2006) ("In other words, the assistance and communication between the members of the alleged enterprise reflects that they shared common interests, but offers no proof of ongoing organization or coordination."). Therefore, the Torres Enterprise as alleged appears to have sufficient continuous personnel to the extent such personnel are required for a finding of a RICO enterprise.

## C.   "Pattern" Requirement

Defendants' second claim in its Motion presents a distinct and complex challenge to the sufficiency of the indictment. Specifically, Defendant asserts that the indictment fails to meet the "pattern" element necessary to establish a violation of RICO. Defendant claims that the Government failed to adequately demonstrate that the acts alleged in the RICO Count are sufficiently related or that there is any continuity to the acts. (Mot. to Dismiss, at 23-28.) Given the dearth of authority concerning motions to dismiss on the pattern requirement and the lack of any clear guidance on the nature of any necessary pleading concerning this element of a RICO charge, the Court denies dismissal on this ground.

///

///

1      **1.  Elements of the Pattern Requirement**

2

3          The seminal case discussing the pattern requirement of RICO

4      liability is the Supreme Court's decision in <u>H.J., Inc. v.</u>

5      <u>Northwestern Bell Tel. Co.</u>, 492 U.S. 229 (1989).  In <u>H.J., Inc.</u>, the

6      Supreme Court noted that the relevant sections of the RICO statutes

7      do not so much define what constitutes a pattern, as state the

8      necessary conditions for a pattern.  492 U.S. at 237.  Under Section

9      1961(5) the pattern of racketeering requirement simply requires "two

10     acts of racketeering, one of which occurred after [October 15, 1970,]

11     and the last of which occurred within 10 years (excluding any period

12     of imprisonment) after the commission of a prior act of racketeering

13     activity."  <u>Id.</u>  In other words, the Supreme Court found that the

14     outer limits of the pattern requirement simply has as a necessary,

15     but not necessarily sufficient, condition the allegation of two

16     racketeering activities.

17         The Supreme Court went on, however, to further narrow the scope

18     of this otherwise broad RICO requirement.  The Court noted that, in

19     normal usage, the term "pattern" must mean something more than simply

20     two acts.  <u>Id.</u> at 238.  The Court turned to the Oxford English

21     Dictionary in determining that a "pattern" must have some

22     "arrangement or order of things or activity."  <u>Id.</u> (citing 11 Oxford

23     English Dictionary 357 (2d ed. 1989)).  Through an examination of the

24     legislative history of the RICO statute, the Court determined that,

25     although Congress intended a flexible interpretation of the statute,

26     it should not encompass sporadic activities or two separate or

27     isolated events.  <u>Id.</u> at 239.  Instead, the Court found that in order

28

"to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." Id. (emphasis in original).

In further clarifying the notions of "related," the Supreme Court turned to a provision in the Organized Crime Control Act of 1970 ("OCCA"), Pub. L. 91-452, 84 Stat. 922.  The Court extracted its definition of relatedness from an explanation of the "pattern" requirement in Title X of the OCCA (now partially repealed). Id. at 239-40.  Title X stated that "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 240 (quoting 18 U.S.C. § 3575(e)).

With regard to the "continuity" element of the pattern requirement, the Supreme Court determined that this could be established through either open- or closed-ended activities. Id. at 241.  The Court stated,

"Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. See Barticheck v. Fidelity Union Bank/First National State, 832 F.2d 36, 39 (3d Cir. 1987). It is, in either case, centrally a temporal concept-and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are

distinct requirements. A party alleging a RICO violation may
demonstrate continuity over a closed period by proving a series
of related predicates extending over a substantial period of
time. Predicate acts extending over a few weeks or months and
threatening no future criminal conduct do not satisfy this
requirement: Congress was concerned in RICO with long-term
criminal conduct. Often a RICO action will be brought before
continuity can be established in this way. In such cases,
liability depends on whether the *threat* of continuity is
demonstrated. See S.Rep. No. 91-617, at 158.

Id. at 241-242 (emphasis in original). It is under such a framework
presented by the Supreme Court that this Court analyzes the
challenges brought by Defendants.


### 2.  Civil Review of Pattern Allegations under RICO


Although H.J., Inc. set forth the various elements required to
*prove* a violation of Federal RICO laws, it did little to alleviate
the challenges faced in the Defendants' present Motion.
Unfortunately, the Supreme Court was not clear whether these elements
of "relation" and "continuity" were necessary for the indictment, or,
to what level of particularity such facts must be set forth in the
indictment.  In the wake of H.J., Inc., a number of the federal
courts in various jurisdictions have been presented with claims
similar to those asserted by Defendants in this case; namely that the
government failed to adequately allege relatedness and continuity.

It is a well-accepted notion, under claims of civil RICO, that a court will examine the allegations regarding relation and continuity. In <u>Heller Financial, Inc. v. Grammco Computer Sales, Inc.</u>, the Fifth Circuit determined that the predicate acts alleged by the plaintiff failed to demonstrate sufficiently related activities to constitute a "pattern" of racketeering activity. 71 F.3d 518, 524 (5th Cir. 1996). The Fifth Circuit was presented with a case involving two types of criminal activity, mail fraud and bribery. <u>Id.</u> The court noted that, while the commission of the bribery scheme was to subvert competition and maintain exclusive relationships, the purpose of the mail fraud was to obtain loan terms unavailable to the public. <u>Id.</u> The court found that the purposes were therefore distinct. The court also noted the disparate methods of commission and the different participants in the commission of the alleged predicate crimes. <u>Id.</u> at 524-25. In response, the plaintiff attempted to show that the underlying purpose was the same in both cases; to extract profits through fraudulent activities. <u>Id.</u> at 525. The Fifth Circuit found such an argument unavailing and stated that there was no adequate relationship to meet the pattern requirement. <u>Id.</u> The court noted that to find relation in this case simply on the basis of the end purpose of profits would "paint with too broad of a stroke." <u>Id.</u>

Other courts have been in accord with these principles. In <u>Howard v. America Online</u>, the Ninth Circuit noted that simply implicating the same participants would make the relatedness inquiry virtually meaningless. 208 F.3d 741, 749 (9th Cir. 2000). In <u>Howard</u>, the purpose, the result, the victim and the method were all "strikingly different" and the attempts to make a relatedness claim

on that basis would eviscerate the meaning of the requirement. <u>Id.</u>
<u>See also</u> <u>Religious Technology Center v. Wollersheim</u>, 971 F.2d 364,
367-68 (9th Cir. 1992) (finding continuity requirement insufficiently
pled in complaint). Similarly, the district court in <u>Ray Larsen</u>
<u>Assocs. v. Nikko Am.</u> found that a broadly alleged relation of profits
was insufficient where the underlying purpose, victims, and methods
were distinct. 1996 U.S. Dist. LEXIS 1163, at *18-21 (E.D. Penn.
February 1, 1996) (granting defendant's motion for summary judgment).
The court determined that the relationship between the activities
alleged - in this case mail and wire fraud and defrauding parties out
of a commission was "too remote to support a claim under RICO." <u>Id.</u>
20-21.

In the Ninth Circuit specifically, courts attempting to resolve
civil RICO cases have dismissed complaints that failed to adequately
allege predicate acts that were sufficiently related or demonstrated
continuity. For example, in <u>Laron, Inc. v. Construction Resource</u>
<u>Servs., LLC</u>, a district court in Arizona dismissed a claim for civil
liability under RICO where the plaintiff failed to sufficiently
allege a continuity between the defendant's predicate acts. 2007 WL
1958732, at *4 (D. Ariz. July 02, 2007). The court found that "it
does not appear from the face of the Complaint and the attached
exhibits that [defendant's] past conduct "by its nature projects into
the future with a threat of repetition." <u>Id.</u> (citing <u>H.J., Inc.</u>, 492
U.S. at 242). Other courts in the Ninth Circuit, although perhaps
not dismissing actions on the basis of a lack of relatedness or
continuity, have at the very least engaged in the analysis. <u>See,</u>
<u>e.g.</u>, <u>Molus v. Swan</u>, 2007 WL 2326132, at *3 (S.D. Cal. Aug. 13, 2007)

1   (noting that plaintiffs adequately alleged relatedness and

2   continuity.)

3       This case, however, presents circumstances somewhat unique from

4   those presented above.  Defendant is charged with *criminal* RICO

5   violations on the basis of various actions set forth in the claimed

6   predicate acts.  Defendant is challenging the sufficiency of those

7   allegations in the *indictment*, which would require a slightly

8   different analysis than that involved in the civil context.

9

10      3.  Sufficiency of Allegations in Indictment

11

12      The role of relatedness and continuity is more perplexing in the

13  criminal context.  Courts have engaged in a distinct analysis when

14  examining these elements on a challenge to the counts in an

15  indictment as opposed to a civil complaint.  There are several

16  general Ninth Circuit principles that guide the analysis on this

17  point.  First, it is clear that a court, as discussed above, must

18  accept the truth of the allegations in the indictment.  See <u>United</u>

19  <u>States v. Jensen</u>, 93 F.3d 667, 669 (9th Cir. 1996).  It is also well

20  established that an indictment is sufficient to survive such a motion

21  if it "sets forth the elements of the charged offense so as to ensure

22  the right of the defendant not to be placed in double jeopardy and to

23  be informed of the offense charged."  <u>United States v. Rodriguez</u>, 360

24  F.3d 949 958 (9th Cir. 2004) (quoting <u>United States v. Woodruff</u>, 50

25  F.3d 673, 676 (9th Cir. 1995) (internal citations omitted)).

26      In the present matter, Defendant George Torres is challenging

27  the sufficiency of the Indictment, arguing that it fails to meet the

28

31

pattern requirement because it simply "alleges a series of disparate acts committed by different people with different purposes, but utterly fails to demonstrate how these various predicate acts are 'related' to one another and to the enterprise." (Mot. to Dismiss, at 23.)

Courts within the Ninth Circuit have, at times, analyzed the sufficiency of the indictments on claims of relatedness and continuity. Specifically, the district court in United States v. Schaefer was presented with a similar claim as that in this case. 2006 WL 276941 (D. Ariz. February 2, 2006). In Schaefer, the defendant asserted, in a pre-trial motion to dismiss the indictment, that the Government failed to adequately allege its RICO claim. Id. at *1. The district court first discussed the general standards of reviewing a motion to dismiss an indictment, as discussed above, and then engaged in an analysis of relatedness and continuity. Id. at *2. The court noted that on the issue of establishing a "pattern of racketeering activity" the "Government must show 'that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" Id. (quoting H.J., Inc., 492 U.S. at 239) (emphasis in original). The court, instead of simply stating that the allegations were facially sufficient, examined the elements of relatedness and continuity. Id. The court noted the definition in H.J. Inc., and then found that there was sufficient relatedness. Id. Similarly, the district court found that the allegations in the indictment sufficiently alleged the defendant members of a gang had engaged in 20 racketeering acts over

a period of more than five years and therefore satisfied the continuity requirement. <u>Id.</u> at *3.

It is true, however, as the Government asserts, that relatedness and continuity are not "essential elements" arising from the language of the statute. (Gov. Opp., at 6.) Such an interpretation finds support from the language of the Supreme Court's decision in <u>H.J., Inc</u>. The holding, however, that they are not essential elements, does not necessarily preclude the argument of the Defendant or the logic of the district court's analysis in <u>Schaefer</u>. As stated in <u>H.J., Inc.</u>, a "prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." 492 U.S. at 239. This holding does not set forth relatedness and continuity as essential elements, but would seemingly suggest that the indictment must allege facts that, if proven at trial, would be sufficient to show that the predicate acts are related and that they pose a threat of continued criminal activity.

The difficulty of this position is that a number of other circuits have more clearly addressed the role of this relatedness and continuity and noted that it need not be alleged in the indictment. Specifically, the Seventh Circuit in <u>United States v. Palumbo Bros., Inc.</u>, stated:

> We agree that an indictment does not have to allege continuity
> with particularity to survive a motion to dismiss. "[C]ontinuity
> is not an element of a RICO offense, *stricto sensu,* but it is
> nevertheless a necessary characteristic of the evidence used to
> prove the existence of a pattern." <u>United States v. Boylan</u>, 898

33

F.2d 230, 250 (1st Cir.1990) [sic]. Continuity of the predicate acts is one element in a pattern of racketeering activity, but it only *partially* evidences a pattern of conduct. It is the combination of continuity along with the relatedness of the predicate acts that demonstrates the pattern of racketeering activity. Allegations in an indictment do not require conclusive proof of every aspect of the crime to sufficiently allege a violation; rather, an indictment requires only the *essential* elements. <u>United States v. Webster</u>, 125 F.3d 1024, 1029 (7th Cir.1997) [sic]. Although continuity is an element of proof necessary *at trial* to conclusively establish Ferrarini's pattern of racketeering activity, as the First Circuit concluded in <u>Boylan</u>, we agree that it is not an essential element of a RICO offense that must be clearly and specifically established in the indictment.

145 F.3d 850, 877-78.  This is in accord with a number of other cases that have stated the same basic proposition.  <u>See, e.g.</u>, <u>United States v. Cuong Gia Le</u>, 310 F. Supp. 2d 763, 774-75 (E.D. Va. 2004) (stating: "Continuity and relationship among the acts in the pattern are merely characteristics of a pattern of racketeering activity, ways in which the pattern may be proved or recognized. As such, continuity and relationship need not be alleged in the Indictment."); <u>United States v. Boylan</u>, 898 F.2d 230, 250 (1st Cir. 1990) (finding that relatedness and continuity are not elements of a RICO offense); <u>United States v. Torres</u>, 191 F.3d 799, 806-808 (7th Cir. 1999) (finding that "[c]ontrary to the defendants' assertions, an indictment does not have to allege continuity, which is not an

element of the offense, with particularity."). Although these cases state that the government does not need to *plead* relatedness and continuity, they do engage in some analysis of whether the *facts* are sufficient to demonstrate a possibility of these factors. For instance, in Palumbo Bros., the Seventh Circuit also stated that the indictment "must contain *sufficient facts* to demonstrate that the racketeering acts are related." Palumbo Bros., 145 F.3d at 877 (citing H.J., Inc.) (emphasis added).

One court has discussed the distinction as resulting from the application of different standards in the criminal and civil contexts. In United States v. Marvoules, a Massachusetts District Court noted that the dismissals that occur on the basis of a failure to sufficiently demonstrate a pattern or continuity are predicated on the distinction between the civil context – where a court may consider such information – and the criminal context – where a court should not. 819 F. Supp. 1109, 1110-1111 (D. Mass. 1993) (distinguishing the First Circuit's opinion in Apparel Art Int'l, Inc. v. Jacobson, 967 F.2d 720 (1st Cir. 1992)). Indeed, there are a number of *civil* cases where courts have looked at the pattern element at the level of relatedness and continuity. See, e.g., Heller Fin., Inc. v. Grammco Computer Sales, Inc., 71 F.3d 524, 524-26 (5th Cir. 1996) (noting that the allegations involved failed to establish relatedness where the methods of commission, the participants, and the purposes were distinct); Ray Larsen Assocs. V. Nikko Am., 1996 U.S. Dist. LEXIS 11163, *18-21; Hughes Halbach & Braun Industs., Ltd., 10 F. Supp. 2d 491 (W.D. Pa. 1998).[3]

---

[3]  Defendant's reliance on United States v. Berlin, 707 F. Supp. 832 (E.D. Va. 1989) appears misplaced as that case

35

During oral arguments, Defendant presented a theoretical approach to reconciling some of the above-mentioned precedent by proposing that the Court engage in a determination of the sufficiency of the facts surrounding the issue of relatedness of the claims. The Government did not respond to this theoretical proposition in the course of argumentation. The Court then ordered the parties to provide supplemental briefing regarding the application of these principles to the instant prosecution.

In its supplemental briefing, Defendant cites the case of <u>United States v. Crysopt Corp.</u>, 781 F. Supp. 375 (D. Md. 1991). In <u>Crysopt</u>, the district court found, on a motion to dismiss, that the Government failed to sufficiently charge the defendant with a pattern of racketeering activity. Specifically, the district court found that the alleged activities did not constitute a "pattern" of racketeering activities under the Supreme Court's standard in <u>H.J. Inc.</u>. 781 F. Supp. at 383 (stating: "[A]ssuming *arguendo* that all six acts cited by the government constitute predicate offenses properly considered against Crysopt, the Court finds that they fail, as a matter of law, to satisfy the continuity element required to establish a pattern of

relied on a subsequently vacated determination of the Fourth Circuit in <u>Walk v. Baltimore and Ohio R.R.</u>, 847 F.3d 1100 (4th Cir. 1988), *cert. granted, judgment vacated by* <u>Walk v. Baltimore and Ohio R.R.</u>, 492 U.S. 914 (1989) (for reconsideration in light of the Court's opinion in <u>H.J., Inc.</u>). In its Supplemental Briefing, Defendant again points to <u>Berlin</u>, merely re-stating the underlying proposition that the court can dismiss an indictment at this stage, regardless of the substantive rule applied. (Def. Supp., at n.3.) While Defendant's argument regarding the court's dismissal in that case may be true, the subsequent reconsideration certainly diminishes the persuasive weight that the case carries in this Court.

racketeering activity in this case.")  Unfortunately, this is the only authority that appears to directly confront the issue of dismissal on a non-essential pattern requirement in a criminal RICO count.  While presented with an issue similar to that present before this Court, the dismissal in <u>Crysopt</u> was ultimately predicated on a number of grounds, including a poorly pled enterprise.  <u>Id.</u> at 381. Compare <u>United States v. Urso</u>, 369 F. Supp. 2d 254, 259-61 (E.D.N.Y. 2005) (denying a motion to dismiss for relatedness grounds based on the limited government proffer because such an analysis challenges the factual sufficiency of the Government's case).  Many of the other cases cited by Defendant in Supplemental Briefing do confront similar issues to the present case, though none are so on point as to be persuasive in this instance.  Specifically, Defendant cites to a number of cases where the indictment's factual allegations undermine the basis for the charge asserted by the government.  (Def. Supp., at 5 (citing <u>United States v. Gatewood</u>, 173 F.3d 983 (6th Cir. 1999); <u>United States v. Cassese</u>, 273 F. Supp. 3d 481 (S.D.N.Y. 2003).)  In <u>Greenwood</u>, for example, the Sixth Circuit found that the indictment was fatally flawed where an element of the offense required a fraudulent statement to be made knowingly and the allegations in the underlying indictment contradicted the knowing or willful element. 173 F.3d at 986-87.  There is no such "false dichotomy" at issue in the instant prosecution; instead, Defendant argues that the Indictment cannot establish the requisite elements of a RICO violation.

The inherent conflict present in the instant prosecution is vexing not simply as a result of the Supreme Court's standards, but

also because of the manner in which it is often applied.  As
discussed in the Court's prior Order, the court in <u>Palumbo Bros.</u>,
states: "[T]he indictment must contain sufficient facts to
demonstrate that the racketeering acts are related and that those
acts establish or threaten continuing criminal activity."  145 F.3d
850, 877-78 (7th Cir. 1998).  The court then goes on to state,
however, that, "[a]lthough continuity is an element of proof
necessary *at trial* to conclusively establish [the defendant's]
pattern of racketeering activity, . . . we agree that it is not an
essential element of a RICO offense that must be clearly and
specifically established in the indictment."  <u>Id.</u> at 878.  Indeed,
cases that Defendant cites in support of its Motion and Supplemental
Briefing state that the allegations in the Indictment must merely be
"sufficient to reasonably substantiate the existence" of the sub-
elements of the pattern requirement.  Defendant George Torres cites
repeatedly to the district court's decision in <u>United States v.</u>
<u>Eppolito</u>, 436 F. Supp. 2d 532 (E.D.N.Y. 2006).  In <u>Eppolito</u>, the
district court was confronted with a motion by the defendants for a
judgment of acquittal following the defendants' convictions on
racketeering charges.  The acts involved in <u>Eppolito</u> presented a
panoply of allegations, involving monetary fraud, drug transactions,
and narcotics charges.  The district court stated that the acts
underlying the government's claims were sporadic acts of criminality
not governed by RICO liability.  <u>Id.</u> at 572.  The district court
noted the distinct nature of the acts and the separate individuals
involved in the predicate crimes, and accordingly found disparate
purposes and goals with these individual acts such that they would

not constitute a unified pattern of related activity.  Id. at 571-73.
The district court further noted the "completely unrelated criminal
acts committed years later in an entirely different geographical area
and milieu and under different circumstances." Id. at 576.  This
decision, however, was made in a post-trial context, after the close
of evidence.  Such a motion is not present before the Court at this
point, and, as discussed above, the Government continually asserts
that it will provide more evidence than what is currently in the
Indictment.

Although, as examined in the Court's prior Order and discussed
again in the Supplemental Briefing, there are a number of courts that
have engaged in an analysis of the relatedness and continuity
requirements, these cases ultimately do little to discuss the powers
of a court to dismiss an indictment in the event that it *did not* find
these two requirements.  See, e.g., Palumbo, 145 F.3d 850 (7th Cir.
1998); Schaefer, 2006 WL 276941 (D. Ariz. Feb. 2, 2006).  The courts
in a number of these cases did not, therefore, confront the central
issue troubling this Court – the power of the Court to dismiss on the
deficiencies in non-essential elements in a RICO case.  Given the
rather permissive standard at a motion to dismiss stage and the
dearth of authority on this particular issue in the federal courts,
the Court finds that the claims cannot be dismissed on the basis of
allegations set forth in the Indictment concerning the pattern
requirement.  In its prior Order the Court discussed its concerns
regarding the actual allegations concerning relatedness – not
continuity – in the present case.  As the Court determines, however,
that such non-essential elements do not have to be proven, but only

have a basis in the allegations as pled, the Court will not at this time determine the proof of those allegations. The racketeering acts are presented in the Indictment as nine predicate acts that the Government alleges were part of a pattern of racketeering activity. (Indictment, at 5-11.) The Indictment then goes through the nature of each of these and the individuals involved. The Indictment alleges that all of these acts constitute a "pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961(1) and 1961(5) . . . through the commission of the [alleged] racketeering acts." (Indictment, at 5.) Accordingly, the Government alleges that there is a pattern of racketeering activity, alleges that the various acts set forth as predicate acts one through nine constitute that pattern, and detail those acts as serving the Torres enterprise. Although the relation of the predicate acts may be attenuated, the Court is not in the position on this stage to dismiss given the precedent presented by the parties and analyzed by the Court.[4] It may be the case after trial that the Government failed to prove the required elements during the course of the trial, but the Court is somewhat constrained in its analysis at this point in the proceedings. At a later point, if Defendant still believes the Government has not met its burden under the law, he may bring another motion on similar grounds.

_____

[4] As an additional matter, Defendant argues that relatedness and continuity now are presented for full disposition as a matter of law due to the Government making an uncontested proffer of evidence. (Def. Supp., at 7.) As noted above, the Court does not find that a full uncontested proffer has been made and so cannot dismiss any part of the Indictment on this basis.

The second requirement of the pattern element, continuity, is more easily satisfied at this stage in the litigation.  As discussed above, the Acts alleged in the indictment span nearly twenty years.  As stated above, under the analysis of H.J. Inc., continuity may be closed-ended or open-ended.  H.J. Inc., 492 U.S. at 241.  While closed-ended continuity is a period of past conduct "that by its nature projects into the future with the threat of repetition," open-ended continuity "may be established by showing that predicate acts or offenses are part of an on-going entity's regular way of doing business."  It appears from the face of the indictment that the government has alleged sufficient facts to meet its burden under either standard at this stage.

First, a number of the predicate acts could, if proven at trial, sufficiently demonstrate an open-ended nature under H.J. Inc..  For example, the sixth predicate act, the act of harboring undocumented workers, itself covers a substantial time period of the alleged violations.  Specifically, the act is alleged to have occurred from 1989 through 2005, and only stopped when it was discovered by immigration authorities.  (Indictment, at ¶¶ 13, 156-74.)  Additionally, the extortion of shoplifters under act seven is alleged to have occurred from 1985 through 2005, also only refraining upon its discovery by law enforcement agents. (Indictment, at ¶¶ 14, 24-33.)  Furthermore, there were incidents of alleged bribery that were occurring during the three years prior to the intervention of law enforcement.  (Indictment, ¶¶ 100, 123-52.)  The Government contends that these were all a matter of course for the business and would ultimately continue if unabated.  (Opp., at 23.)

Second, the remaining predicate acts, the Government maintains, are all examples of closed-ended continuity.  The murders, the government alleges, were capable of future repetition.  The murders may have occurred within a set time period, but as the Government points out, such a cluster does not preclude closed-ended continuity. See, e.g., United States v. Indelicato, 865 F.2d 1370, 1384-85 (2d Cir. 1989) (finding that three predicate act murders allegedly committed close in time "made it clear beyond peradventure that there was a threat of continuing racketeering activity.").  Defendant did not vigorously contest the issue of continuity, simply arguing that the acts do not bear a sufficient "pattern" to each other to create continuity.  (Def. Mot. to Dismiss, at 33.)  Such an argument, however, is predicated on the previous issue of relatedness and does not truly address the continuity of the acts.  The continuity is a separate factor from the relatedness as presented in H.J. Inc., and the Court declines to engage in an analysis that would eliminate that distinction between the two factors.

Given the relatively light burden on the Government at the pre-trial stage, the Court denies the motion to dismiss for lack of an alleged pattern.  If, of course, the Government is unable to prove a pattern or establish continuity through the course of the trial as a matter of law, the Court may evaluate evidence at such a time.

///

///

## D.   Manuel Torres's Participation in the Torres Enterprise

In his separate Motion to Dismiss Count One of the Indictment, Defendant Manuel Torres also individually asserts that the Government, in the Indictment and in its Statement of Facts, has insufficiently alleged that he had some part in directing the affairs of the Torres Enterprise.  (Manual Torres Mot., at 8-9.) In order to be liable under Section 1962(c), a person must be found to have "conduct[ed] or participate[d], directly or indirectly, in the conduct of [a racketeering] enterprise's affairs."  19 U.S.C. Section 1962(c).  The Supreme Court has determined that to conduct or participate in the conduct of an enterprise's affairs, a person "must participate in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993).  This "operation and management" test requires the Government to show that a defendant had "some part in directing" the affairs of the enterprise in order to support that person's conviction under Section 1962(c).  Id. at 179.  This requirement does not demand that a defendant have a "formal" or "upper management" role in the enterprise. Id. at 179, 184.  "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management.  An enterprise also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery."  Id. at 184.

The Supreme Court has yet to decide the question of how low down the "ladder of operation" a person may be and still be considered to "operate" the enterprise. Id. at 184 n 9. In two

published opinions, however, the Ninth Circuit has subsequently applied the ruling of Reves to the question of whether an attorney who provided legal services to the members of an alleged enterprise could be regarded as operating or managing the enterprise. In Baumer v. Pachl, the Ninth Circuit determined an attorney played no role in directing the affairs of the enterprise because his involvement did not begin until six years after the start of the alleged fraudulent scheme and his participation thereafter providing occasional legal services was "at best sporadic." 8 F.3d 1341, 1344-45 (9th Cir. 1993). The court also noted that the attorney lacked a formal position in the limited partnership that was the key component of the alleged enterprise. Id. In Webster v. Omnitron International, Inc., the Ninth Circuit similarly found that an attorney could not be regarded as directing the affairs of an enterprise. 79 F.3d 776, 789 (9th Cir. 1996). While the panel found that the attorney at issue had a formal role as Assistant Secretary of the enterprise, his duties were purely "ministerial." These ministerial duties, along with his efforts to promote the enterprise, were in the Ninth Circuit's view insufficient to constitute operating or managing the enterprise. Id.

Manuel Torres is alleged generally to have conducted and participated in the conduct of the affairs of the Torres Enterprise through a pattern of racketeering activity. (Indictment, 4-5.) However, Manuel Torres asserts that the specific facts alleged in the Indictment cannot support the conclusion that Manuel Torres played any role in directing the affairs of the enterprise and that the Statement of Facts submitted by the Government indicate that Manuel Torres was at most an "order-follower" in the enterprise. (Manual

Torres Mot., at 8-9). Manuel Torres is alleged in the Indictment to have been an employee of the Numero Uno Franchises and is described in the Statement of Facts as a manager of the Numero Uno supermarkets. (Indictment, at 2; SAF, p. 43, 1.21.) Manuel Torres is also alleged in the Indictment to have been involved in three predicate acts of the Torres Enterprise: 1) purchasing produce and meat from a semi-truck that had been stolen on or about June 11, 1986 for the Numero Uno Franchises, 2) conspiring and agreeing to murder Ignacio Meza with George Torres and other alleged members of the enterprise from approximately March 30, 1998, until approximately October 13, 1998, 3) and "conceal[ing], harbor[ing], and shield[ing] from detection" undocumented alients, "caus[ing] to be concealed, harbored, and shielded from detection" undocumented alients and conspiring to the same in conjunction with George Torres from approximately June 11, 2004, until approximately June 12, 2005. (Indictment, at 5, 7-8 14.) The Statement of Facts declares that the Manuel Torres was the "right hand man of [George Torres]" who committed crimes for the enterprise "always at the direction of George Torres." (SAF, at 46).

It is arguably the case that the specific facts alleged in the Indictment alone may not be sufficient to demonstrate that Manuel Torres operated or managed the Torres Enterprise. However, the Court cannot, on the basis of the Indictment's allegations as to Manuel Torres's involvement in the predicate acts of the enterprise, truly gauge Manuel Torres's general role in all aspects of the management of the enterprise. This will not become clear until after all the evidence as to the nature and workings of the alleged enterprise and

the details of Manuel Torres's involvement in the alleged enterprise are presented at trial. Though the facts presented in the Statement of Facts may undermine the Government's allegations as to Manuel Torres's role in directing the enterprise, the Government has continued to state, as discussed above, that it has not made a full proffer of evidence. Therefore, further evidence may become available before trial as to any managerial role Manuel Torres had in the enterprise. Certainly, the fact that Manuel Torres is described in the Statement of Facts as always acting on orders from George Torres does not preclude the possibility that Manuel Torres played some middle-managerial role in the enterprise as a whole or with regard to certain acts of the enterprise. Therefore, though the Court is highly skeptical of the Count One charge against Manuel Torres, it is not in a position to dismiss it, whatever its view of the sufficiency of facts alleged in the Indictment and appearing in the Statement of Facts.

## E.   Count Two of the Indictment

Defendants Manuel Torres, George Luk, Steve Carmona, Carlos Monterosso and Mario Solano each join George Torres's Motion and make separate arguments to dismiss Count Two of the Indictment, which charges a RICO conspiracy in violation of 18 U.S.C. § 1962(d). Defendants first argue, in joining with Defendant George Torres, that if Count One's substantive RICO charge is dismissed, then Counts Two and Three of the Indictment must fall as well.  (See Luk Motion, at 4, n.1; Carmona Motion.)  As the Court has determined that the

substantive RICO charge cannot be dismissed at this time, this argument necessarily fails.  Each Defendant then separately argues Count Two should be dismissed for insufficiently setting forth the requisite elements of a RICO conspiracy charge in the Indictment.

A charge of RICO Conspiracy under Section 1962(d) states that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962.  The instant Conspiracy charge is predicated on a violation of Section 1962(c), the standards for which have already been outlined above by the Court.  The Ninth Circuit has adopted the view that "a defendant is guilty of conspiracy to violate § 1962(c) if the evidence showed that she 'knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise.'"  U.S. v. Fernandez, 388 F.3d 1199, 1230 (9th Cir. 2004) (quoting Smith v. Berg, 247 F.3d 532, 538 (3d Cir 2001)).  The Government need not show that a defendant agreed to commit two or more predicate acts or agreed to facilitate every aspect of the alleged enterprise to support a conviction under 1962(d).  Salinas v. U.S., 522 U.S. 52, 65-66 (1997).

### 1.  Defendant Manuel Torres

Manuel Torres asserts that the Indictment fails to adequately allege that he agreed to violate the RICO laws. (Manuel Torres Joinder, at 5.) Manuel Torres is alleged in the Indictment in conjunction with the other alleged members of the alleged RICO conspiracy to have "knowingly combined, conspired, confederated, and

agreed together and with each other to violate [18 U.S.C. 1962(c)], that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Torres Enterprise through a pattern of racketeering activity." (Indictment, at 12.) Manuel Torres is then alleged to have committed or assisted in committing multiple overt acts in furtherance of the conspiracy including receiving stolen goods for the Numero Uno supermarkets, assaulting employees of California Market, Inc., agreeing to murder Iganzio Meza, and concealing undocumented aliens. (Indictment, at 14, 18-19, 20, 21.) It appears therefore that the Indictment has made adequate allegations that Manuel Torres knowingly agreed to facilitate a scheme that included the operation or management of the Torres Enterprise. Manuel Torres is alleged to have agreed to conduct and participate in the enterprise and in support of this allegation is further alleged to have assisted in the committing of three overt acts in support of the enterprise. Though Manuel Torres is not alleged to have been involved in facilitating every aspect of the Torres Enterprise, that is not necessary for a conviction under 1962(d). This is not to say that on the basis of the facts alleged in the Indictment the fact-finder will or should find that Manuel Torres conspired to facilitate the enterprise, but only that the Indictment has adequately alleged that Manuel Torres did so under the general pleading standards for indictments already discussed. See Fernandez, 388 F.3d at 1220.

Manuel Torres also argues that the predicate acts of the Torres Enterprise Manuel Torres is alleged to have conspired to facilitate are insufficiently related to a single enterprise and fail to relate

48

to a pattern of racketeering activity. As such, Manuel Torres argues, the Indictment fails to adequately allege that Manuel Torres engaged in a single RICO conspiracy. (Manuel Torres Joinder, at 5.)  These arguments entirely overlap with those made as to Count One of the Indictment, which have already been dismissed for the reasons stated above. See supra Sections III.B, III.C.) Therefore, the Court will not dismiss the Count Two allegations against Manuel Torres at this juncture.

### 2.   Defendant George Luk

Defendant Luk argues that the Indictment fails to allege that Mr. Luk engaged or conspired to engage in two acts of racketeering activity, and fails to allege any agreement between to engage in illegal activities. The Indictment sets forth the charge under Count Two against Defendant Luk in Paragraph 100, which alleges that "[b]etween April 1, 2002 and April 1, 2006, GEORGE TORRES, CARMONA, and LUK committed the acts described in paragraphs 123 through 152 of this First Superseding Indictment, which are incorporated herein by reference." (Indictment, at 24.)  The incorporated paragraphs present numerous allegations concerning multiple instances of bribery and fraud, which involved Defendants George Torres, Carmona, and Luk. Specifically, the Indictment alleges that George Torres provided valuable assets to Luk and Carmona "with the intent of causing CARMONA to use, and LUK to assist CARMONA in using, CARMONA's influence as a Commissioner to obtain the Alvarado Street supermarket permits." (Indictment, at 32.) (presenting an overview of the

allegations that follow).  There are multiple individual acts of bribery or fraud that are specifically alleged in the Indictment. For instance, the Government alleges that Luk picked up and cashed a $15,000 dollar check obtained from George Torres for the purposes of obtaining permits, half of which would be paid to Defendant Carmona. (Indictment, at 34.)  Separately, Defendant Luk had lunch with another commission member, Beverly Ziegler, where he attempted to persuade her to vote for the Alvarado Street permits.  (Indictment, at 35.)  There are also other allegations of bribery and fraud alleged in the Indictment.  For example, the Government alleges that Carmona and Luk agreed to ask for $10,000 from George Torres to bribe the Los Angeles City Council to support the permits for the Alvarado Street supermarket.  (Indictment, at 36.)  The Indictment also alleges that these activities were part of an agreement between the conspiring parties to "conduct and participate, directly and indirectly, in the conduct of the affairs of the TORRES enterprise through a pattern of racketeering activity . . . ."  (Indictment, at 12.)  Accordingly, there is an allegation in the Indictment asserting that the parties agreed to commit the predicate acts knowingly to violate Section 1962(d).

Given the standards pronounced by the Ninth Circuit, the allegations presented in the Indictment are sufficient to state a count of RICO conspiracy at this stage.  The Government must demonstrate, at trial, that Defendant Luk agreed to conduct the affairs of the racketeering enterprise or further its goals through a pattern of racketeering activity.  Salinas, 522 U.S. at 62-65. Although Defendant Luk argues that the Indictment fails to allege

50

that Mr. Luk committed at least two acts of racketeering activity, the Government need not show that a defendant agreed to commit two or more predicate acts or agreed to facilitate every aspect of the alleged enterprise to support a conviction under 1962(d). <u>Id.</u> at 65-66. Given the allegations in the Indictment, and the low threshold set by the Ninth Circuit and the Supreme Court, the Court will not dismiss Count Two of the Indictment against Defendant Luk at this time.[5]

### 3.  Defendant Steven Carmona

Defendant Steven Carmona similarly moves to dismiss Count Two of the Indictment.  Just as with George Torres, Manuel Torres, and George Luk, the Indictment, in Paragraph 19, alleges that Defendant Steven Carmona knowingly agreed to violate 18 U.S.C. § 1962(c), by engaging in a pattern of racketeering activity to further the Torres Enterprise.  The Government again incorporates the acts set forth in Paragraphs 123 through 152, which detail the alleged activities of Defendant Carmona.  Specifically, the Indictment alleges that on April 1, 2002, George Torres offered a condominium in Los Angeles to Carmona for use as his residence.  Paragraph 125 alleges that Carmona

---

[5] Defendant Luk makes an additional argument that the RICO statute is unconstitutionally vague as applied in this case. Defendant Luk also notes, however, that such challenges have been expressly rejected by the Ninth Circuit.  (Luk Motion, at 11) (citing <u>United States v. Dischner</u>, 974 F.2d 1502, 1510 (9th Cir. 1992)).  Accordingly, although Defendant Luk may preserve this as an issue, at the present time the Court cannot undertake an analysis of the void for vagueness doctrine given the Ninth Circuit's consistent rejection of such challenges.

stated that he resided at 600 West Ninth Street, Unit 1504, in Los Angeles, California, without disclosing that this residence was owned by George Torres and provided to Carmona at no cost.  The purpose of this series of transactions was, allegedly, to provide Carmona with a residence to use and list as his residence so that he could qualify to become a member of the Los Angeles Central Area Planning Commission ("CACP").  (Indictment, at 33).  Additionally, Carmona was allegedly to receive half of a $15,000 check given to Defendant Luk by George Torres in order to provide the requisite permits for the Alvarado Street supermarket.  (Indictment, at 34.)  George Torres also allegedly told Carmona what he should tell others to say at a hearing in support of the Alvarado Street supermarket permits.  (Indictment, at 35.)  The Indictment describes numerous alleged transactions and conversations that took place between Defendant George Torres and Defendant Steven Carmona, which were all part of a process to allegedly further the pattern of racketeering acts and goals of the Torres Enterprise.  (Indictment, at 12.)

Defendant Carmona cites to a number of civil cases in which dismissals for failure to properly allege RICO conspiracies have been granted.  See, e.g., Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir. 1993); Toscano v. Toscano, 403 F. Supp. 2d 214 (E.D.N.Y. 2003); Rose v. Bartle, 871 F.2d 331 (3d Cir. 1989).  As discussed previously in this Courts Order, civil complaints are subject to a different level of scrutiny than criminal indictments.  Indeed, Defendant Carmona's discussion of many of these cases further demonstrates the nature of evaluating the merits of criminal charges through trials, rather than at the motion to dismiss stage.  Defendant Carmona cites to cases

from the Fifth Circuit stating that in order to prove a RICO
conspiracy, "the government must establish (1) that two or more
people agreed to commit a substantive RICO offense and (2) that the
defendant knew of and agreed to the overall object of the RICO
offense." United States v. Delgado, 401 F.3d 290 (5th Cir. 2005).
The nature of what the Government must prove at trial and what the
Government must allege in the Indictment, however, are distinct
concepts.  The Government in the instant prosecution has alleged that
Defendant Carmona agreed to violate Section 1962(c) through a pattern
of racketeering activity, which was carried out through a series of
bribes and financial transactions.  Defendant Carmona attempts to
place a higher burden of proof on the Government than is required at
this stage of the prosecution.


### 4.  Defendants Carlos Monterosso and Mario Solano


Defendants Monterosso and Solano also jointly seek to dismiss
Count Two of the Indictment as to them for failure to allege they
agreed to violate RICO. (Monterosso and Solano Joinder, at 5-6.) Mr.
Monterosso and Mr. Solano are each alleged in the Indictment to be
employees of the Numero Uno Franchises and members or associates of
the Torres Enterprise. (Indictment, at 1-2).  In conjunction with the
other alleged members of the alleged RICO conspiracy, they are
alleged to have "knowingly combined, conspired, confederated, and
agreed together and with each other to violate [18 U.S.C. 1962(c)],
that is, to conduct and participate, directly and indirectly, in the
conduct of the affairs of the Torres Enterprise through a pattern of

53

1   racketeering activity." (Indictment, at 12.) They are further

2   specifically identified in two of the alleged overt acts in

3   furtherance of the conspiracy. Specifically, the Indictment first

4   alleges that, from January 1, 1985 to March 8, 2005, George Torres

5   directed "that they should collect cash, assets and other items of

6   value from suspected shoplifters at the Numero Uno supermarkets in

7   exchange for not reporting those suspected shoplifters to the

8   police." (Id. at 14.)  The Indictment then alleges that, during the

9   same period, they directed other employees of the Numero Uno

10  supermarkets "that they could collect cash, assets and other items of

11  value from suspected shoplifts at the Numero Uno supermarkets in

12  exchange for not reporting those suspected shoplifters to the

13  police." (Id.) The Indictment goes on to allege a number of instances

14  in which unnamed employees demanded some form of compensation from

15  suspected shoplifters in exchange for not contacting the authorities

16  to arrest the suspected shoplifters. (Indictment, at 14-16.)

17      The above allegations are sufficient to meet the low threshold

18  set by the Ninth Circuit for criminal indictments. See Fernandez, 388

19  F.3d at 1230. They allege that Defendants Monterosso and Solano

20  knowingly agreed to facilitate a scheme which includes the operation

21  or management of a RICO enterprise.  The Indictment additionally

22  alleges certain overt acts in furtherance of the conspiracy

23  participated in by Defendants Monterosso and Solano. The fact that

24  the Indictment alleges that Mr. Monterrosso and Mr. Solano were

25  directed that they "should" extort shoplifters, while Mr. Monterosso

26  and Mr. Solano subsequently informed other employees only that they

27  "could" extort shoplifters, does not render the conspiracy

28

54

allegations of the Indictment insufficient, as Defendants asserts. (Monterosso and Solano Joinder, at 7-8.) Defendants Monterosso and Solano may have generally agreed to facilitate the enterprise despite not ultimately following the directions of George Torres exactly. While this discrepancy in what Mr. Monterosso and Mr. Solano were told to do by George Torres and what they ordered other employees to do may be probative at trial of a lack of agreement, it does not preclude the possibility of the alleged agreement.

Defendants Monterosso and Solano also challenge whether their alleged acts of extortion are sufficiently alleged to be related to the Torres Enterprise and its alleged pattern of racketeering activity. (Monterosso and Solano Joinder, at 4.)  This issue entirely conflates with the issue of whether the Indictment's allegations of enterprise and relatedness of the racketeering activity are sufficient. Because the Court has already determined that the Indictment's enterprise and pattern allegations on the whole are sufficient, it is necessarily the case that the relatedness of the specifically alleged extortion actions to the enterprise and its pattern of racketeering activity have been sufficiently alleged.

Defendants Monterosso and Solano finally attempt to argue that the alleged extortion facilitated by Defendants Monterosso and Solano violated no California law. Defendants rely solely on California Penal Code Section 490.5(b), which states that "[w]hen an unemancipated minor's willful conduct would constitute petty theft involving merchandise taken from a merchant's premises . . .  any merchant or library facility who has been injured by that conduct may bring a civil action against the parent or legal guardian having

control and custody of the minor." Cal. Pen. Code Section 490.5(b).
The subdivision then goes on to state that its provision are "in
addition to other civil remedies and do not limit merchants or other
persons to elect to pursue other civil remedies." Id. Defendants
argue this provision implies that merchants may pursue alternate
remedies against shoplifters, like demanding the value of the stolen
merchandise, in the place of pursuing criminal charges.[6] (M. and S.
Joinder, 8-9). However, in no way does this provision authorize
Defendants to pursue remedies that otherwise violate California law.
Defendants are accused of committing extortion in violation of
California Penal Code Section 518. Extortion is defined as "the
obtaining of property from another, with his consent, . . . induced
by a wrongful use of force or fear." Though the Government fails to
discuss it, it has been established definitively in California since
1918 that using the threat of prosecution as a means to extort
property one believes was stolen from oneself does constitute the
wrongful use of fear. People v. Beggs, 178 Cal. 79, 83, 172 (Cal.
1918)); see also Flatley v. Mauro, 39 Cal.4th 299, 326 (Cal. 2006).
As the Ninth Circuit has declared:

> The law of California was established in 1918 that belief that
> the victim owes a debt is not a defense to the crime of
> extortion. 'It is the means employed which the law denounces,
> and, though the purpose may be to collect a just indebtedness
> arising from and created by the criminal act for which the

---

[6] Defendants also initially rely on California Penal Code
Section 1377, but concede in their Reply that this section
has no relation to the alleged actions of Defendants. (S and
M Reply, at 6.)

threat is to prosecute the wrongdoer, it is nevertheless within
the statutory inhibition.'

Gomez v. Garcia, 81 F.3d 95, 97 (9th Cir. 1996) (quoting People v.
Beggs, 178 Cal. 79, 83, 172 (Cal. 1918)). Hence, the alleged actions
at issue clearly fall within the definition of extortion under
Section 518 and so violate state law.

## IV.    CONCLUSION

In accordance with the reasoning set forth above, the Motions to
Dismiss, and all arguments joined, are DENIED.

IT SO ORDERED.

DATED:  6/2/08

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE